Kimball *v.* Lee.

---

# Charles W. Kimball et al.

*v.*

## John Lee et al.

A receiver of an insolvent corporation of this state was appointed by this court. He was also appointed ancillary receiver in New York, where there was property of the corporation. Lee, a creditor, recovered a judgment in New York against the corporation. He afterwards made an assignment there for the benefit of his creditors, which contained preferences that rendered it void here. Nearly all the corporation's creditors agreed with him and with each other to compromise their claims at fifty cents on the dollar. Among those who so agreed was the assignee of Lee. After notifying all of Lee's creditors of the application therefor, the assignee obtained an order of a New York

Kimball *v.* Lee.

court approving his acceptance of the compromise. He thereupon accepted it (by the terms of compromise the money was to be paid by a fixed day), and soon afterwards the receiver made the agreement of compromise with him and gave him at his, the receiver's, office in New York, a writing signed by himself as receiver, notifying him that pursuant to the agreement the fifty per cent. would be paid to him on or before the day fixed, as above mentioned. The complainants, who were some of Lee's creditors here, afterwards attached the money payable on the Lee claim in the hands of the receiver.—*Held,* that they were estopped, by acquiescence and delay, from preventing the receiver's paying the assignee the amount due him under the compromise.

Bill for relief. On order to show cause why injunction should not issue.

*Mr. H. Wallis,* for complainants.

*Mr. C. Parker,* for the assignee.

*Mr. J. P. Stockton,* for the receiver.

THE CHANCELLOR.

The North River Construction Company, a corporation of this state, was by this court declared to be insolvent under the act " concerning corporations," and Ashbel Green, Esq., was appointed receiver January 12th, 1884.

By an order of the supreme court of New York, made two days afterwards, he was appointed receiver in that state in aid of his receivership here. Among the claims against the corporation was one of large amount in favor of John Lee, for money due upon a contract between him and the corporation. Lee sued the company in the supreme court of New York for his claim, and in November, 1884, recovered judgment for $52,304.89. On or about the 18th of December following, he made a general assignment (with preferences) in New York for the benefit of his creditors. His assignee was Thomas B. Rutan. The assets of the construction company consisted almost entirely of the stock and bonds of the New York, West Shore and Buffalo Railway Company. The railroad of that company had, at the time of the appointment of the receiver of the construction company, just

Kimball *v.* Lee.

been opened to Buffalo, but it was in an unfinished condition, and the company was in financial embarrassment. In June, 1884, a suit for foreclosure of mortgage was begun against the railway company and receivers were appointed thereunder. Lee and others put in in that suit, by their answers, their claims to mechanics liens against the property of the railway company for their work &c. under their contract with the construction company. About two hundred suits were begun, to which the receiver of the construction company was a party. In July, 1884, the receiver, apprehending total loss of the West Shore bonds and stock held by him, in order to prevent it entered into and promoted a scheme of re-organization of the West Shore company. To that end he called a meeting of the creditors of the construction company, and they, with but few and comparatively insignificant exceptions, agreed to authorize him to make a compromise, one part of which was that they should accept fifty per cent. of the face value of their respective claims in full thereof, in cash, to be paid before January 5th, 1886. He obtained the consent of the stockholders of the construction company, also, and he then effected an arrangement with the mortgage bondholders of the railway company, by which the decree in the foreclosure suit was entered, the property sold and a new railroad corporation organized. He thus obtained securities from which he raised the money necessary to carry out the compromise and pay the creditors of his company in accordance therewith.

Among the creditors who consented were Lee and Rutan, his assignee. The latter did so under special permission obtained from the county court of Kings county, New York, by order made September 12th, 1885, by which he was authorized to accept fifty per cent. on the amount found due Lee on his claim against the railway company and the construction company, amounting to $48,638.33 (the amount at which it was allowed by the receiver) and interest, and to execute the necessary papers to carry the compromise into effect; such payment to be made to the assignee on or before January 5th, 1886. This order was made upon formal petition, and upon due proof of notice to Lee's creditors. The receiver, very soon after the making of

that order, made the agreement of compromise with Lee and Rutan. It appears that an agreement dated New York, July 13th, 1885, was signed by the creditors of the construction company, by which they agreed, with the receiver and with each other, that they would accept, in full payment and satisfaction of their claims against that company and the railway company on that account, fifty per cent. of the face value thereof, as allowed by the receiver, provided notice were given on or before October 1st, 1885, that the same would be paid in cash on or before the 5th of January, 1886; and they further thereby agreed to sign all necessary papers to carry out the agreement. On the 26th of September, 1885, the receiver, at his office in the city of New York, gave to the assignee a written notice signed by himself as receiver, that pursuant to the agreement fifty per cent. of the face value of the claim of John Lee, without interest, would be paid to the assignee, in cash, on or before the 5th of January, 1886. The assignee has demanded payment of the money, but the receiver declined to pay, because of the stay granted in this cause. On or about October 27th, 1885, a writ of attachment was issued out of the supreme court of this state at the suit of the Wallis Iron Works, a corporation of this state, against Lee as a non-resident debtor, and, by permission of this court, it was executed by attaching the money in the receiver's hands for the Lee claim. The attachment was levied upon it as a claim of the said John Lee, defendant, against the North River Construction Company, in the hands of Ashbel Green, receiver of the said North River Construction Company, amounting to $48,638.38. The claim of the Wallis Iron Works was, when the attachment was issued, held by the complainant Charles W. Kimball (it was assigned to him September 22d, 1884), and the writ of attachment, though issued in the name of the Wallis Iron Works as plaintiff, was to his use. The bill is filed by Mr. Kimball, who is a resident of this state, and Elias T. Day, of Jersey City, also a creditor of Lee (he has applied and come in under the attachment), suing for themselves and such other creditors as may apply under the attachment; and its object is to obtain an adjudication that the assignment from Lee to Rutan

Kimball *v.* Lee.

is, by reason of its giving preferences, invalid as against Lee's creditors residing here, and to get a decree that the receiver pay over the money to the auditor in the attachment. On the filing of the bill an order to show cause why the receiver should not be restrained from paying over the money was granted with an *ad interim* stay.

The assignment to Rutan was made December 18th, six months after the appointment of the receiver. The order of the New York court authorizing the assignee to make the settlement was made September 12th, 1885, and the settlement was made very soon thereafter. The attachment was not issued until October 27th, 1885, about a month after the receiver had made the settlement with the assignee. The assignee had, under his assignment, a good title to the property thereby assigned, but that title was, as to assets in states whose policy it was not to recognize as against the claims of creditors of the assignor domiciled there, the validity of general assignments for the benefit of creditors with preferences, liable to be defeated by attachments sued out of the courts of those states by creditors domiciled therein to recover their debts out of such assets. The receiver made the settlement with the assignee without any manner of opposition or objection on the part of the creditors of Lee domiciled here. And that settlement was made in conjunction with other creditors of the construction company and as part of a plan into which they and other persons interested in the railroad and construction companies entered for their mutual benefit, and by which the means were raised by the receiver to pay the amount which the creditors agreed with each other and with him that they would accept in satisfaction of their claims. Not only did the attaching creditor delay issuing the attachment until after the agreement of settlement had been made by the assignee under the sanction of a court (which sanction was specially obtained on notice to the creditors of Lee), but the attachment was not issued until after the receiver had notified the assignee that he would pay him the amount agreed upon between them, and had so bound himself to pay it to the assignee. The agreement between the receiver and the assignee must be regarded in equity as a

novation of the debt. It was an agreement that, in consideration of the assignee's consent to accept the compromise, the receiver would pay him the amount agreed upon. Thenceforward the obligation was a substantially new one between the receiver and the assignee, the consideration of it being the compromise of the old debt, the title to which was, at the time of the compromise, in the assignee.

No claim of the complainants, based on the policy of our law, can be of any avail against it now. They have waited too long. They have waited until the receiver has become liable, by special agreement, to pay the assignee. Before that time the liability was different. It was an obligation to pay the claim or the dividends thereon to the person or persons entitled thereto, and the title of the assignee might have been questioned. But now the obligation has been changed, by fair and wholly legitimate means, into an obligation on the part of the receiver to pay the assignee. The complainants are barred by their laches, and the receiver is, under the circumstances, entitled to the protection of the court against the garnishment.

The order to show cause will be discharged, with costs.